<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> v. <br><br> **LANGSTON HUNTER,** <br><br> Defendant. | Action No. 19-CR-620 (JAD) <br><br> **OPINION AND ORDER** |

<u>**JOSEPH A. DICKSON, U.S.M.J.**</u>

This matter comes before the Court upon Defendant Langston Hunter's application for an Order revoking his pretrial detention and releasing him from custody pursuant to 18 U.S.C. § 3142, et seq. (Def.'s April 30, 2020 Letter). The Court conducted hearings on this issue, via Zoom videoconference, on May 8, 2020 and May 11, 2020. After carefully considering Defendant's application, the United States of America's objections, and for good cause shown; and for the reasons stated below, Defendant's application is **DENIED**.

I.   <u>**RELEVANT FACTS AND PROCEDURAL HISTORY**</u>[1]

On August 9, 2019, the Newark Police Department "executed a court-authorized search warrant on a residence located in the vicinity of Hawkins Street and Horatio Street in Newark, New Jersey." (Compl., Attachment B at 1, ECF No. 1). While law enforcement officers knocked on the door to the apartment and announced "Newark Police search warrant", another officer observed that "an individual, later identified as the [D]efendant Langston Hunter . . . was attempting to escape from the [r]esidence through a back window." (<u>Id.</u>). Defendant allegedly

---

[1] The information included in this section is taken from the Complaint and other documents in the record for this matter.

carried a key fob, which he used to unlock a vehicle located behind the residence. (Id.). "Upon spotting law enforcement behind the residence, [Defendant] pulled himself back into the apartment," where officers detained him. (Id.). Upon executing warrants to search both the residence and the vehicle parked behind the residence, law enforcement officers recovered multiple loaded handguns, a spare magazine loaded with 10 rounds of ammunition, approximately 30 grams of suspected crack cocaine, approximately 260 grams of suspected marijuana, approximately 115 envelopes containing suspected heroin, drug packaging and paraphernalia, and "approximately $2,606.00 in U.S. currency, including 586 one-dollar bills, consistent with suspected drug proceeds." (Id. at 1-2).

On August 12, 2019, the Court signed a Criminal Complaint asserting three Counts against Defendant Hunter. (See generally Compl., ECF No. 1). The record reflects that authorities arrested Mr. Hunter on August 23, 2019, and that the Hon. James B. Clark, U.S.M.J. conducted an initial appearance on the same date. (See Minute Entry for Aug. 23, 2019 Initial Appearance, ECF No. 3). At that time, Defendant Hunter consented to detention, while reserving his right to make a bail application at a later date. (Id.). On September 4, 2019, a grand jury ultimately returned an indictment charging Defendant with one count of Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1). (See Indictment, ECF No. 9). Defendant remains in custody to date.

On April 30, 2020, Defendant filed a letter application seeking release from custody pursuant to 18 U.S.C. §§ 3142 et seq. Defendant argues, in essence, that he presents neither a flight risk nor a danger to the community, and that, in any event, 18 U.S.C. § 3142(i), empowers the Court to order a "'temporary release' of a person in pretrial custody 'to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or

for another compelling reason." (Def. Apr. 30, 2020 Letter at 1-2) (citing 18 U.S.C. § 3142(i)). Defendant argues that a temporary release would be appropriate under that statute, given that: (1) a preexisting medical condition leaves him vulnerable to complications from the COVID-19 pandemic, and (2) the facility where he is currently held has "imposed extraordinarily restrictive conditions" in response to the pandemic, "such that [he] is unable to adequately prepare his defense while in custody." (Id. at 2).

The Government objects to Defendant's application, arguing that: (1) Defendant presents a danger to the community, in light of the nature and circumstances of charged offense, as well as his alleged history of reoffending; (2) Defendant presents a risk of flight given his history of probation violations (and his failure to appear at a hearing regarding one such violation) and lengthy potential sentence in this matter; and (3) assuming that Defendant has a preexisting condition that puts him at a greater risk of complications related to COVID-19, the Essex County Correctional Facility has taken several significant measures to protect its inmates. (See generally, Gov't May 7, 2020 Letter). The Government's May 7, 2020 letter includes a factual proffer on these points.

## II. LEGAL DISCUSSION

### a. Applicable Legal Standards

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required . . ." U.S. Const. Amend. VIII. Although the Eighth Amendment does not "grant an absolute right to bail, there is a substantive liberty interest in freedom from confinement." United States v. Perry, 788 F. 2d 100, 112 (3d Cir. 1986). Consistent with these principles, the Bail Reform Act of 1984 (the "Act") favors pretrial release and imposes a duty on federal courts to make determinations regarding the bail status of federal criminal defendants. 18

U.S.C. §3142(a).  Moreover, in the context of such bail determinations, the Act's provisions "effectively limit judicial consideration . . . to two relevant criteria:  the risk that the defendant will flee and the risk that he will pose a danger if admitted to bail."  United States v. Provenzano, 605 F.2d 85, 93 (3d Cir. N.J. Aug. 21, 1979).  The court must not only determine whether an applicant poses such a risk, but also measure them "in terms of conduct that cannot be reasonably safeguarded against by an imposition of conditions upon the release."  Id. at 93-94.  "Whenever a court can fashion the conditions of an applicant's release in such a manner that the danger may be averted, it must do so and grant the motion for release."  Id. at 94 (emphasis added).  It is therefore clear that the Court must only deny bail "as a matter of last resort."  Id.[2]

When evaluating the sufficiency of potential conditions of release, "the Court will consider the so-called '3142(g) factors': 1) the nature and circumstances of the offense charged, including whether the offense involves a controlled substance or firearm; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  United States v. McIntyre, No. 16-13 (KM), 2018 U.S. Dist. LEXIS 5269, at *8 (D.N.J. Jan. 10, 2018) (citing 18 U.S.C. § 3142(g); United States v. Traitz, 807 F.2d 322, 324 (3d Cir. 1986); United States v. Coleman, 777 F.2d 888, 892 (3d Cir. 1985)).  "Pursuant to 18 U.S.C. §3142(e), however, if after a detention hearing a court determines that 'no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community,' the court must Order the detention of the person before trial."  United States v. Vargas, No. 13-2044 (JS), 2013 U.S. Dist. LEXIS 88944,

---

[2] In certain circumstances, 18 U.S.C. § 3142(e)(3) creates a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."  The Court finds that the rebuttable presumption is inapplicable here.

at *12 (D.N.J. June 25, 2013).  The Court notes that, "[i]f the government or court believes detention is appropriate because there is a risk of flight, this must be proved by a preponderance of the evidence."  Id. (citing United States v. Himler, 797 F.2d 156, 161 (3d Cir. 1986)).  "The preponderance of the evidence standard requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence."  Id. (citing U.S. v. Abdullahu, 488 F. Supp. 2d 433, 438 (D.N.J. 2007)).[3]  The Court may also order that a defendant remain in detention if it finds, by clear and convincing evidence, that no combination of conditions will reasonably assure the safety of any person or the community at-large.  United States v. Perry, 788 F.2d 100, 106, 114 (3d Cir. 1986)

### b.    Danger to the Community

After reviewing the 3142(g) factors, the Court finds, by clear and convincing evidence, that Mr. Hunter presents a danger to the community, and that no combination of conditions on his release would sufficiently mitigate that danger.

The Court first considers the nature and circumstances of the offense charged.  18 U.S.C. § 3142(g)(1).  While Defendant argues that he faces a "single non-violent possession-based charge", (Def.'s Apr. 30, 2020 Letter at 15), the Court cannot ignore that Defendant is charged with possessing not one weapon, but three, all loaded.  Furthermore, the Government has proffered evidence that Defendant tried to flee from the back door of his residence while law enforcement officers knocked at his front door.  The Government also proffers that Defendant was previously observed outside of that residence taking money from individuals and then

---

[3] For the reasons the undersigned articulated on the record during the bail hearing in this matter, 18 U.S.C. § 3142(i) is inapplicable in the context of this initial bail application, and the Court will not address it further herein.

bringing them inside the building where his apartment was located (and where law enforcement officers also found large quantities of illegal drugs during a lawful search of the premises).[4]

The entire scenario raises several questions. Defendant argues that the Government's proffers regarding the drug issues (i.e., that drugs were openly displayed on a table inside the residence; that Defendant allegedly took money outside before bringing individuals into the residence) make no sense. Even discounting any drug-related aspects of the Government's proffer, the Court is left with the fact that Defendant has been charged with possession of three loaded weapons that were seized from an apartment in which only he was present and from the car that he had been driving. Defendant has indicated that he has defenses to the possession charge and his able attorney has raised questions about the Government's recitation of facts. Suffice it to say, however, that the nature and circumstances of the charge in this matter strongly suggest that Defendant presents a danger to the community.

The Court must next consider the weight of the evidence against Defendant. 18 U.S.C. § 3142(g)(2). After carefully considering the facts discussed herein, the Government's proffer, and the parties' respective arguments, the Court finds that, <u>for bail purposes</u>, the weight of the evidence is sufficient for the Court to conclude that Defendant presents a danger to the community.

Turning to Defendant's "history and characteristics", 18 U.S.C. § 3142(g)(3), the Court finds it pertinent that Defendant already has two felony drug convictions on his record. The Court must also address the two lawfully recorded jail conversations in which Defendant is heard saying (in the second conversation) "kill all rats." Defendant argues strongly that the Court should not take that phrase literally, and that he was instead attempting to demonstrate that he

---

[4] The Court reiterates that Defendant is not currently charged with any drug-related offenses.

was not, himself, a "rat." The Government's proffer seems relatively straightforward when one listens to both conversations. In the first, Defendant expresses some level of concern that "they actin' all nonchalant to the fact somebody is talkin' . . .." In the second, Defendant says "kill all rats." Perhaps defense counsel's explanation will ultimately prove to be correct. But perhaps it will not. At this point, the Court is left with words – uttered while Defendant was in jail on a gun possession charge - that may just as easily be perceived as threats of harm or directions for others to inflict such harm. All of these facts, taken together with Defendant's previous record, including multiple felony drug convictions, leave the Court with no choice but to conclude that Defendant represents a danger to society.

While, as noted above, this is not a § 3142(i) application, the Court must nonetheless address issues related to the COVID-19 pandemic. Defendant argues, at length, with certifications from medical professionals, that "[p]risons provide an ideal environment for the spread of disease." (Def.'s Apr. 30, 2020 Letter at 4). They are so inherently dangerous, Defendant essentially argues, that prisoners (like Defendant) with underlying medical conditions such as diabetes should be released immediately. Defendant's situation has grown more complicated since he filed his original application, however. In the middle of the first hearing, the Court learned that Defendant had tested positive for antibodies. While medical experts cannot conclusively tell us what this means (a fact Defendant's counsel points out), the strong implication is that Defendant had been infected previously but is no longer infected. Taking a more skeptical view, Defendant argues that the test that the Essex County Correctional Facility used is not sufficiently reliable, and that he is still susceptible to contracting COVID-19. This raises questions, Defendant argues, about whether Defendant would receive appropriate medical

care if he were to remain in custody. Defendant contends that he would be safer relying on services available outside the jail if he were to become sick.

It should be noted that the Court previously denied, on the record, Defendant's request to be released on Due Process grounds.[5] While the Court will not reiterate its reasoning for that decision here, it observes that it cannot find, based on the information available in the record, that the Essex County Correctional Facility is unprepared to respond to the onslaught of COVID-19 or otherwise care for its inmate population. The Court bases its statement on the 6th and 7th Declarations of Alfredo Ortiz, the Direct of the Essex County Correctional Facility. Therein, Director Ortiz sets forth detailed steps that the Facility has taken to prevent infection, as well as the Facility's plan for when an inmate does become infected. Taking this information into account, the Court cannot find that the possibility Defendant (who appears to have actually already been infected, survived, and then produced antibodies) may become infected with COVID-19 outweighs or modifies the Court's finding that Defendant presents a danger to the community.

Finally, the Court must determine whether it can impose terms and conditions of release that would reasonably assure the safety of the community. The Court reiterates that 18 U.S.C. § 3142(e)(3)'s rebuttable presumption (i.e., that no conditions or combination of conditions would be sufficient) is inapplicable here. The fact that it <u>may</u> apply if the Government later files a superseding indictment is not sufficient to trigger it. If it were, the presumption would apply in all cases. The Court will instead concentrate its analysis on the sufficiency of Defendants' proposed conditions of release.

---

[5] Defendant had argued that the nation's jails and prisons are unequipped to adequately respond to the pandemic and that continued detention therefore constitutes unlawful punishment and, in turn, a violation of his constitutional right to due process.

Defendant has proposed a bail package that includes several conditions, including: (1) an unsecured bond, to be co-signed by an individual to be approved by Pre-Trial Services; (2) requiring Defendant to reside with an assigned third-party custodian (either his girlfriend, Nikita Cobb or her son, Rafiq Cobb, both of whom Pre-Trial Services has found suitable); and (3) though unclear from the initial application, the Court understands that Defendant would also agree to house arrest.

Based on my findings of Defendant's characteristics and the fact that one of the weapons was found in the vehicle registered to Ms. Cobb, I cannot conclude that Defendant's proposed conditions of release would sufficiently protect the interests of the community. His ability to freely communicate with others who speak in terms of "no compromise", (see Gov't May 7, 2020 Letter), and "kill all rats", while he is pending charges for possession of three highly lethal, loaded weapons, one of which was found in the vehicle registered to a proposed third party custodian, convinces this Court that Defendant's proposed bail package is insufficient. Accordingly, I must deny Defendant's application for release.

### III. CONCLUSION

Based on the foregoing, it is on this 19th day of May, 2020,

**ORDERED** that Defendant's application for an Order revoking his pretrial detention and releasing him from custody pursuant to 18 U.S.C. § 3142, et seq. is **DENIED**.

SO ORDERED

s/ Joseph A. Dickson
JOSEPH A. DICKSON, U.S.M.J.